# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
### JOHNSTOWN

JESSE RUSSELL SIMPSON,     )
    )
        Plaintiff,     )
    )
        v.     )
    )
JOHN KENNETH DAVENPORT, et    )
al.,     )
    )
        Defendants.     )

Civil Action No. 3: 20-cv-0024

Chief United States Magistrate Judge
Cynthia Reed Eddy

## MEMORANDUM OPINION[1]

Plaintiff, Jesse Russell Simpson ("Simpson"), initiated this case on February 12, 2020, while a federal prisoner confined at FCI Loretto in Cresson, Cambria County, Pennsylvania. (ECF No. 1). Simpson's motion for leave to proceed *in forma pauperis* was granted and the Complaint filed on March 9, 2020. (ECF No. 7). On May 6, 2020, the Court received a notification that Simpson had been released from custody (ECF No. 14) and on July 29, 2020, Simpson filed an Amended Complaint as a matter of course (ECF No. 19), which remains Simpson's operative

---

[1] In accordance with the provisions of 28 U.S.C. § 636(b)(1), the identified and served parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 22, 49). While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under 28 U.S.C. § 636(c), see *Williams v. King*, 875 F.3d 500 (9th Cir. 2017), this Court is not aware of any decision holding that consent is necessary from defendants who are both unserved and unidentified. Courts disregard such defendants in other contexts, including contexts affecting jurisdiction. *See, e.g.*, 28 U.S.C. § 1441(b)(1) (providing that for removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8 & 9*, 172 F.R.D. 411, 414–15 (D. Haw. 1996) (reaching the same conclusion for diversity jurisdiction with respect to cases initially filed in federal court). The Court therefore concludes that consent of the unserved and unidentified defendants in this case, specifically "all Other Mail Room Staff Members," is not necessary to proceed under § 636(c).

amended pleading.  Simpson brings this action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[2] and  the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq*.

Presently before the Court is Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, as well as a brief in support, together with supporting documentary exhibits. (ECF Nos. 47 and 48).  Plaintiff filed a brief in opposition, together with supporting documentary exhibits (ECF No. 54), to which Defendants filed a Reply and attached additional supporting documentary exhibits.  (ECF No. 58).  The matter is ripe for disposition.  For the reasons that follow, the Court will deny the motion for summary judgment, grant the motion to dismiss as to Claims 4 and 5 of the Amended Complaint, and limit the RFRA claims to only defendants Davenport, Mack, and Dipko.

## I.      Procedural and Factual Background

At the time of the events giving rise to this action, Simpson was a convicted federal prisoner incarcerated at FCI Loretto.  Simpson was designated to FCI Loretto on April 12, 2019 and remained in custody there until April 23, 2020, when he was transferred to home confinement pursuant to 18 U.S.C. § 3621(b).  Declaration of Robin Summers, at ¶ 3 (ECF No. 48-1). Simpson filed the instant Amended Complaint on July 29, 2020. Simpson completed his federal supervision on March 26, 2011.  (BOP Inmate Locator, https://www.bop.gov/inmateloc).

In the Amended Complaint, Simpson contends that the staff at FCI Loretto engaged in a wide-reaching conspiracy which was "calculated harassment and retaliation for Plaintiff's LGBT

---

[2]      *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economu*, 438 U.S. 478, 504 (1978).

status, his religious beliefs and his complaint history."   Amended Complaint, *passim.*   The Amended Complaint asserts nineteen (19) counts, in which Simpson claims his constitutional rights were violated under the First Amendment for retaliation, P's Memo in Supp. of Complaint at 1 - 4 (ECF No. 19-1); the First and Fifth Amendment for denial of access to courts (*id*., at 5 - 9); the Fifth Amendment for denial of his right to equal protection (*id.,* at 10 – 15); and the Fourth Amendment with respect to searches of his incoming mail and legal mail, or in the alternative, the Eighth Amendment against cruel and unusual punishment as "Defendants are using mail searches as a harassment and intimidation tool against Plaintiff." (*id*., at 16 - 17).[3]   Simpson also contends Defendants' actions violated RFRA by placing a substantial burden on the exercise of his religious beliefs.

The Amended Complaint names seventeen individual defendants, all officials or staff members at FCI Loretto, as well as "all other mail room staff members" at FCI Loretto.  Simpson seeks an award of compensatory damages in the amount of $1,000.000.00 jointly and severally against Defendants; an award of punitive damages in the amount of $1,000.000.00 jointly and severally against Defendants; an award of fees in the amount of $7,500.00; and such other relief as it may appear he is entitled.  Amended Complaint, at 26 (ECF No. 19).

---

[3]    The Amended Complaint is not a model of clarity.  While the Amended Complaint is separated into numbered paragraphs, there is no section entitled "Claims for Relief" or "Causes of Action."  Rather, Section V, entitled "Statement of Claim," is comprised of nineteen numbered paragraphs (1 – 19, inclusive) each describing a set of facts purporting to support Simpson's claims that Defendants violated his constitutional rights. Simpson concludes each paragraph by blanketly asserting that Defendants  "violated Plaintiff's freedom of religion, freedom of speech, freedom from unreasonable searches and seizures, freedom of equal protection under the laws, and freedom from cruel and unusual punishment and the RFRA for substantially burdening his religious beliefs." Simpson's Memorandum of Law in support of his Amended Complaint (ECF No. 19-1) outlines his five legal causes of action and provides some factual context to support his argument that his constitutional rights were violated.

In lieu of filing an Answer, Defendants filed the instant motion arguing that the Amended Complaint should be dismissed, or in the alternative, summary judgment be granted, on several grounds:  (1) summary judgment should be granted on seventeen (17) of Simpson's (19) nineteen claims because Simpson failed to exhaust his grievances to final review and that fifteen (15) of the seventeen (17) named individual defendants in the Amended Complaint were not referenced in any of his grievances; and (2) Claims 4 and 5[4] should be dismissed for failure to state a claim because (i) the doctrine of sovereign immunity bars official capacity *Bivens* claims, (ii) Simpson has failed to allege a violation of his constitutional rights, and (iii) Defendants are entitled to qualified immunity. Defendants also seek dismissal of Simpson's RFRA claims arguing that Simpson has failed to plead how each individual Defendant substantially burdened his religious freedom.  Defendants filed a brief and, in support of their contention that Simpson failed to exhaust his administrative remedies, filed the Declaration of Robin Summers, with attached "Public Information Inmate Data as of 01-11-2021," Simpson's Inmate History," "An Administrative Remedy Generalized Retrieval for the period 01-01-2019 thru 12-31-2019," and "An Administrative Remedy Generalized Retrieval for the period  from 01-01-2020 through 12-31-2020."

The Court converted the motion to one for summary judgment limited to the issue of exhaustion and advised the parties that the issue of exhaustion would be decided under Federal Rule of Civil Procedure 56, while the remainder of the motion would be decided under the

---

[4]     It appears Defendants have addressed on the merits only two (2) of the nineteen (19) claims raised in the Amended Complaint, specifically Claims 4 and 5: "The only two administrative remedies subject to a constitutional analysis are Plaintiff's allegations that a soiled and stained book was rejected (No. 986014) and that his purchase of transgender items was delayed (No. 990159)." Ds' Br. at 13 (ECF No. 48).  As a result, the Court will decide only the legal arguments raised by Defendants and will not expand its constitutional analysis beyond Claims 4 and 5.

standards for deciding a motion to dismiss. (ECF No. 50). Simpson, in response, filed a thirty-nine page brief, and attached twenty-one pages of exhibits[5] (ECF 54), to which Defendants filed a Reply Brief (ECF No. 58), and attached twenty-six pages of an "Administrative Remedy Generalized Retrieval, Single Line Format." (ECF No. 58-1).

## II.     Standard of Review

Three relevant standards of review are at issue in Defendants' motion to dismiss / motion for summary judgment:  Federal Rule of Civil Procedure ("Rule") 12, subsections (b)(1) and (b)(6); and Rule 56.

### A.     *Federal Rule 12(b)(1)*

Under Rule 12(b)(1), a court must grant a motion to dismiss if there is a lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A plaintiff bears the burden of persuasion that federal jurisdiction is present. *Saint Vincent Health Ctr. v. Shalala*, 937 F. Supp. 496, 501 (W.D. Pa. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir. 1991)). The threshold to survive a motion to dismiss under Rule 12(b)(1) is lower than under Rule 12(b)(6). *Lunderstadt v. Colafella*, 886 F.2d 66, 70 (3d Cir. 1989). This is because dismissal for lack of jurisdiction cannot be predicated on the mere probability that a plaintiff's legal theories are false; a court will only dismiss for a lack of jurisdiction if a plaintiff's legal theories (1) are solely proffered to obtain federal jurisdiction but otherwise are immaterial, or (2) are "insubstantial on their face." *Growth Horizons, Inc. v. Del. Cnty., Pa.,* 983 F.2d 1277, 1280 (3d Cir. 1993) (quoting *Bell v. Hood*, 327 U.S. 678, 773, 776 (1946)).

---

[5]     The exhibits are (i) The State of Louisiana Literacy Test, (ii) a Cosmopolitan article entitled "Even Harvard Students Couldn't Pass This 1964 Test," and (iii) a Bureau of Justice Statistics - Special Report entitled "Education and Correctional Populations."  See ECF No. 54-1, 54-2 and 54-3.

B.    *Federal Rule 12(b)(6)*

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. In *Ashcroft v. Iqbal*, the Supreme Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim*." Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and

6

unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baroka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaintant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). When matters outside of the pleadings are presented to the Court on a Rule 12(b)(6) motion, the Court has the discretion to exclude such matters from consideration. *Fed.R.Civ.P. 12(d); Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 905 n.3 (3d Cir. 1997). If matters outside the pleadings are presented to, and not excluded by, the court, a motion to dismiss must be converted to a motion for summary judgment. *See* Fed.R.Civ.P.12(d).

C.  *Federal Rule of Civil Procedure 56*

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S at 247-48.  An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue.  *See id*.  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'."  *Matsushita*, 475 U.S. at 587; *Huston,* 568 F.3d at 104.

This standard is somewhat relaxed with respect to pro se litigants. Where a party is representing himself pro se, the complaint is to be construed liberally. A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

With these standards in mind, the Court now turns to its analysis and discussion of the pending motion.

### III.   Discussion

A.    *The Motion to Dismiss Under Rule 12(b)(1)*

Defendants seek dismissal of all claims against Defendants in their official capacities. Simpson responds that all claims are asserted against the Defendants only in their individual capacities. P's Br. at ¶ 43 (ECF No. 54).  Accordingly, Defendants' request to dismiss the *Bivens* claims against Defendants in their official capacities under Rule 12(b)(1) will be denied as moot.

Next, the Court will determine under Rule 56 whether Defendants are entitled to summary judgment on Simpson's claims for failing to exhaust available administrative remedies.  And then, because Defendants have only addressed on the merits Claims 4 and 5, the Court will determine whether these two claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

B.    *The Motion for Summary Judgment Under Rule 56*

The Court first addresses the Motion for Summary Judgment because the exhaustion of administrative remedies is a mandatory prerequisite to any prisoner's filing of a civil rights action regarding prison conditions. Defendants argue that Simpson failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") on seventeen of the nineteen claims brought in the Amended Complaint.[6] As a result, Defendants seek summary judgment on these seventeen (17) claims as a matter of law. For the reasons explained below, the Court finds that at the time Simpson filed his Amended Complaint, Simpson was no longer "a prisoner confined in any jail, prison, or other correctional facility" and, therefore, was not subject to the PLRA's

---

[6]    Specifically, Defendants argue that Simpson failed to exhaust his administrative remedies on each of his claims, with the exception of Claims 4 and 5, which Defendants do not dispute were fully exhausted.

administrative exhaustion requirement.  *Garrett v. Wexford*, 938 F.3d 69, 84 (3d Cir. 2019), *cert. denied*, 140 S.Ct. 1611 (2020).

The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Under the PLRA, "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law . . . ."  *Id.* at § 1997e(h).

In 2020 when Simpson filed the original complaint, the PLRA's exhaustion requirement applied to him.   He was a "person incarcerated" in a "correctional facility," i.e., FCI Loretto, serving an aggregate term of incarceration of fifty months after having been convicted in April 20, 2017, in the United States District Court for the Northern District of Georgia of Manufacturing Firearms without a License and convicted on June 13, 2017, in the United States District Court for the Eastern District of Michigan of Transport of an Unregistered Firearm in Interstate Commerce. Declaration of Robin Summers, at ¶ 2. (ECF No. 48-1).  The summary judgment record reflects, however, that on April 23, 2020, Simpson's status changed, resulting in Simpson no longer being a "prisoner" as defined in the PLRA.

On that date, Simpson was released from FCI Loretto and transferred to home confinement pursuant to 18 U.S.C. § 3621(b). The Amended Complaint, which became Simpson's operative amended pleading, was filed on July 29, 2020, approximately three months after Simpson had been released from FCI Loretto.  Because the Amended Complaint relates back to Simpson's original complaint, "his change in status (*i.e.,* his release) operates to cure the original defect (*i.e.*, his failure to exhaust administrative remedies)." *Garrett,* 938 F.3d at 88. *See also Downey v.*

10

*Pennsylvania Department of Corrections,* 968 F.3d 299, 308 (3d Cir. 2020).  In *Garrett*, the plaintiff filed a third amended complaint after he was released from prison. *Garrett*, 938 F.3d at 78. The Court of Appeals for the Third Circuit held that the PLRA's exhaustion requirement did not apply because his third amended complaint arose from the same transaction or occurrence as his initial complaint. *Id*. at 83–84.

Similarly, in this case, when Simpson filed the Amended Complaint on July 29, 2020, he was no longer "confined in any jail, prison, or other correctional facility." The Amended Complaint arises from the same transaction or occurrence as the initial complaint. *Garrett* squarely fits the facts presented in this case. Consequently, following the precedent established by our Court of Appeals in *Garrett* and *Downey*, Defendants' motion for summary judgment must be denied.

C.     *The Motion to Dismiss Under Rule 12(b)(6) – Claims 4 and 5*

1.     *Bivens* Actions

Assuming, for purpose of this Memorandum Opinion only, that the allegations of Claims 4 and 5 are sufficient to state an alleged constitutional violation, the Court must determine whether a *Bivens* damage remedy exists for these alleged violations. Congress established a damages remedy under 42 U.S.C. § 1983 with respect to state officials for constitutional violations, but it did not enact a corresponding statute with respect to federal officials. *Ziglar  v. Abbasi*, -- U.S. --, 137 S.Ct. 1843, 1855 (2017).  In *Bivens*, however, the Supreme Court of the United States recognized an implied cause of action for damages against federal officials who have violated an individual's Fourth Amendment right to be free from unreasonable searches and seizures. *Bivens*, 403 U.S. at 396. The Supreme Court has extended *Bivens* to other contexts only twice.  First, in *Davis v. Passman*, 442 U.S. 229 (1979), it held that an administrative assistant fired by a congressman had a *Bivens* remedy for gender discrimination under the Fifth Amendment's Due

Process Clause.  And then in *Carlson v. Greene*, 446 U.S. 14 (1980), the Supreme Court permitted a *Bivens* remedy against federal prison officials for failure to provide adequate medical treatment for a prisoner's asthma under the Eighth Amendment's Cruel and Unusual Punishment Clause. "These three cases—*Bivens, Davis, and Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S.Ct. at 1855.  Over the course of nearly four decades, the Supreme Court "consistently has refused to expand *Bivens* actions beyond these three specific contexts." *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020). As such, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity," *Ziglar,* 137 S. Ct. at 1857, signaling the unlikelihood that *Bivens* should be expanded to any new contexts and emphasizing the separation-of-powers problems that the doctrine presents. *Id.* at 1856.

In *Ziglar,* the Supreme Court provided a two-step analysis to determine whether to imply a *Bivens* cause of action in a new context.  First, the Court held that, "if the case is different in a meaningful way to previous *Bivens* cases by [the Supreme] Court, then the context is new." *Id*. at 1859.  The *Ziglar* Court explained:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary in to the function of other branches; or the presence of potential factors that previous Bivens cases did not consider.

*Id*. at 1860.  "So a new-contexts inquiry begins by looking at the existing *Bivens* contexts against which a new case can be compared. Only decisions by the Supreme Court—and not those by [the Court of Appeals for the Third Circuit] or any other circuit court—are relevant. *See Mack*, 968

F.3d at 319 (citing *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018)).”  *Mammana v. Barben*, 856 F. App’x 411, 415 (3d Cir. 2021).[7]

Next, if the case implicates a new *Bivens* context, the court must then ask whether “special factors counsel hesitation in expanding *Bivens*.”  *Mack*, 968 F.3d at 320; *see also Ziglar,* 137 S. Ct. at 1857.  The Supreme Court provided guidance on this step as well:

> [This] inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.  Thus, to be a “special factor counselling hesitation,” a factor must cause a court to hesitate before answering question in the affirmative.

*Ziglar*, 137 S. Ct. at 1857-58.  One such factor may be whether “any alternative, existing process for protecting the injured party’s interest may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.”  *Id*. at 1858 (internal quotation marks and brackets omitted).

### 2.   The Parties’ Arguments

In Claims 4 and 5, the Amended Complaint states that Simpson’s  constitutional rights were violated by Defendants when a “college textbook for Plaintiff’s correspondence MBA program” was rejected (Claim 4) and when the receipt of the transgender commissary items Simpson had ordered was delayed for several months (Claim 5).  Defendants argue that, even assuming that these allegations rise to the level of a constitutional claim, there is no *Bivens* remedy for either claim and, therefore, these claims should be dismissed.

Claim 4 of the Amended Complaint, states in relevant part:

On July 16, 2019, the Loretto FCI mail room staff improperly rejected Plaintiff’s college textbook for Plaintiff’s correspondence MBA program. This was part of the

---

[7]    The Court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the Court has carefully considered and is persuaded by the panel's *ratio decidendi*.

staff conspiracy against LGBT inmates and the staff conspiracy against Plaintiff and was calculated harassment and retaliation for his LGBT status, religion, complaint history, and lawsuit against Loretto FCI staff members. This violated Plaintiff's freedom of religion, freedom of speech, freedom from unreasonable searches and seizures, freedom of equal protection under the laws, and freedom from cruel and unusual punishment and the RFRA for substantially burdening his religious beliefs.

Amended Complaint, at 4-5, ¶ 4. And Claim 5 of the Amended Complaint, states in relevant part:

For several months, defendant Archie withheld plaintiffs transgender commissary items. When Plaintiff complained about it, he was paged to Trust Fund Supervisor Richardson's office to discuss the complaint and Archey threatened him with an incident report. Later, Acting Warden Dixon and National Inmate Appeals Administrator Ian Connors confirmed in writing that Archey did in fact threaten Plaintiff with an incident report during the "informal resolution" meeting," but it was somehow not intended to coerce Plaintiff into dropping his complaint. This was part of the staff conspiracy against LGBT inmates and the staff conspiracy against Plaintiff and was calculated harassment and retaliation for Plaintiff's complaint about transgender order process, LGBT status, religious beliefs, overall complaint history, and lawsuit against Loretto FCI staff members. This violated Plaintiff's freedom of religion, freedom of speech, freedom of equal protection under the laws, and freedom from cruel and unusual punishment and the RFRA for substantially burdening his religious beliefs.

Amended Complaint, at 5, ¶ 5.

Defendants argue that both claims should be dismissed under Rule 12(b)(6) for failure to state a claim. According to Defendants, "there is no *Bivens* remedy for the allegations he describes, and even if there were, the contours of the constitutional rights were not clearly established with sufficient clarity to over Defendants' entitlement to qualified immunity." Without directly addressing Defendants' arguments as to Claims 4 and 5, Simpson responds makes general arguments that the Court of Appeals for the Fourth and Ninth Circuits have allowed a *Bivens* claim to proceed under a direct First Amendment retaliation claim (P's Resp at ¶ 44), and that "[h]arassment with the intent to cause mental suffering, like in Claims 12, 16, and 17, especially to someone with mental disabilities as severe as Plaintiff's is not substantially different that the context in *Carlson*." *Id*. at ¶ 45.

14

Defendants reply by stating that Simpson failed to exhaust Claims 12, 16, and 17. But as explained above, Simpson is no longer subject to the exhaustion requirement of the PLRA and any argument regarding exhaustion is not relevant.  Further, at this point in the litigation, Defendants have not addressed the merits of any claims other than Claims 4 and 5. Turning to these two claims, Defendants argue:

> The rejection of a stained book and a delayed order of transgender items are dissimilar to a medical treatment causing death in violation of the Eighth Amendment, as in *Carlson v. Green*, 446 U.S. 14 (1980), or to a gender discrimination claim under the Fifth Amendment, as in *Davis v. Passman*, 422 U.S. 228 (1979), or to a warrantless entry of a residence in violation of the Fourth Amendment, as in *Bivens*.

Reply, at 3-4 ((ECF No. 58).

3.      Analysis[8]

The Court of Appeals for the Third Circuit has instructed that the question "[w]hether a *Bivens* claim exists in a particular context is 'antecedent to the other questions presented,' " cautioning that "it will often be best to tackle head on whether *Bivens* provides a remedy, when that is unsettled." *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (citing *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006-07 (2017)). This is a threshold determination because "[a]ssuming the existence of a *Bivens* cause of action—without deciding the issue—can risk needless expenditure of the parties' and the courts' time and resources." *Id*. at 89.

"[T]he first question a court must ask in a case like this one is whether the claim arises in a new *Bivens* context, *i.e.,* whether the case is different in a meaningful way from previous *Bivens* cases decided by this Court."  *Ziglar*, 137 S.Ct. at 1864 (internal quotation marks and citation

---

[8]      The Court accepts as true the facts as they appear in the Amended Complaint and draws all possible inferences from those facts in the light most favorable to Simpson.  *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008); *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

omitted).  "[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous *Bivens* cases."  *Id*.

a.  First Amendment Retaliation Claims[9]

The Supreme Court of the United States "has never held that *Bivens* extends to First Amendment claims."  *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). [10]  Prior to the Supreme Court's decision in *Ziglar*, on many occasions the Court of Appeals for the Third Circuit held that plaintiffs could seek redress for First Amendment violations by bringing a *Bivens* suit.  *See, e.g., Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981); *Paton v. La Prade*, 524 F.2d 862, 872 (3d Cir. 1975); *see also George v. Rehiel*, 738 F.3d 562, 585 n.24 (3d Cir. 2013) (assuming without deciding that a *Bivens* action could be brought alleging a First Amendment right to be free from government retaliation for speech). However, the judicial landscape changed after *Ziglar* and our

---

[9]      Neither Claim 4 nor Claim 5 involves any factual allegations which would implicate a First Amendment access to courts claim.

[10]      A decision from the Court of Appeals for the Ninth Circuit recently created a circuit split on whether *Bivens* should be extended to a First Amendment retaliation claim.  *See Boule v. Egbert*, 998 F.3d 370 (9th Cir.), *cert. granted in part by Egbert v. Boule*, No. 21-147, 2021 WL 5148065 (Nov. 5, 2021).  In *Boule*, the appellate court recognized that federal Border Patrol Agents may be personally liable under *Bivens* for allegedly retaliating against First Amendment-protected speech. On November 5, 2021, the Supreme Court granted certiorari in the case on two questions: (1)  whether a cause of action exists under *Bivens* for First Amendment retaliation claims and (2) whether a cause of action exists under *Bivens* for claims against federal officers engaged in immigration related functions for allegedly violating a plaintiff's Fourth Amendment.

      Notwithstanding that *certiorari* has been granted in *Boule*, the question before this Court is whether at the time of the incidents giving rise to Simpson's First Amendment retaliation claims, had the Supreme Court of the United States recognized an implied right to sue federal officials for damages for a violation of the First Amendment.  And the answer to that question is "no"  - - as of the date of the incidents alleged in this lawsuit and as of the date of this Memorandum Opinion, the Supreme Court has not recognized a *Bivens* remedy for a First Amendment retaliation claim.

court of appeals disavowed its earlier cases recognizing that expanding *Bivens* beyond the contexts already recognized is disfavored.

Since *Ziglar,* the Court of Appeals for the Third Circuit consistently has refused to extend *Bivens* to a First Amendment retaliation claim.   In *Vanderlock v. United States*, 868 F.3d 189, 199 (3d Cir. 2017), the Court of Appeals refused to extend *Bivens* to a First Amendment retaliation claim brought against an agent of the Transportation Safety Administration stating that "the existence of a *Bivens* action for First Amendment retaliation is no longer something that we should assume without deciding."  *Id*. In 2018, the Court of Appeals rejected a First Amendment *Bivens* claim in a prison-housing context, *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018), and, in 2020, the Court of Appeals rejected a First Amendment retaliation *Bivens* claim in the prison-work-assignment context. *Mack v. Yost*, 968 F.3d 311, 323 (3d Cir. 2020*).  See also Watlington on behalf of FCI Schuylkill African American Inmates v. Reigel*, 723 F. App'x 137, 140 n.3 (3d Cir. 2018) (per curiam) (stating that "a First Amendment retaliation claim . . . may not apply to a *Bivens* claim against a federal official.")(citing *Vanderklok*, 868 F.3d at 199; *Reichle*, 566 U.S. at 663 n.4)).

Guided by the cases noted above, the Court concludes that extending *Bivens* to Simpson's First Amendment retaliation claims in Claims 4 and 5 would be contrary to law.  Accordingly, Simpson's First Amendment retaliation claims in Claims 4 and 5 of the Amended Complaint will be dismissed for failure to state a claim.

b.      Fourth, Fifth, and Eighth Amendments Claims

To the extent Simpson has brought Claims 4 and 5 under the Fifth Amendment, the Court finds that there are meaningful differences between Simpson's Fifth Amendment claims and the claims at issue in *Davis*, which involved Fifth Amendment equal protection claims based on gender discrimination in the federal workplace context. Assuming these claims are being brought under

the Eighth Amendment, the Court finds that there are also meaningful differences between Plaintiff's Eighth Amendment claims and the claims at issue in *Carlson*, which involved Eighth Amendment deliberate indifference claims based on the denial of medical care.  And, assuming these claims are being brought under the Fourth Amendment, there is no resemblance whatever to the facts at issue in *Bivens.*

For these reasons, the Court finds that the allegations in Claims 4 and 5 present new *Bivens* contexts and, as such, are "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."  *Ziglar*, 137 S.Ct. at 1859.

Having concluded that Simpson's allegations in Claims 4 and 5 present a new *Bivens* context, the Court must turn to the second step of *Ziglar* and examine whether "there are any special factors that counsel hesitation" in permitting the extension.  *Ziglar,* 137 S. Ct. at 1857. "There may be many such factors, but two are particularly weighty:  the existence of an alternative remedial structure and separation-of-powers principles."  *Id.* at 1857-58.  As to the first, because Simpson is no longer incarcerated, his claim  "is 'difficult to address except by way of damages actions after the fact,' which cannot be accomplished through the administrative grievance process or a habeas petition."  *Mammana v. Barben*, No. 4:17-cv-00645, 2020 WL 3469074, at *3 (M.D. Pa. 2020), *aff'd*, 856 F. App'x 411 (3d Cir. 2021) (quoting *Bistrian*, 912 F.3d at 92, quoting *Ziglar*, 137 S. Ct. at 1862)). The absence of an alternative remedy, however, is not dispositive.  The Court must still consider whether other factors – in particular, separation-of-powers concerns – weigh against creating a *Bivens* remedy to fill the void.  *See id*. (citing *Wilkie v. Robbins,* 551 U.S. 537, 550 (2007)). The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?"  *Ziglar*, 137 S. Ct. at 1857. In *Ziglar*, the Supreme Court said "[t]he answer will most often be Congress." *Id.* Thus, any special-factors assessment must seek to

discern whether Congress would want the federal judiciary to impose "a new substantive legal liability" in a given case. *See id.* at 1857-58. The Supreme Court has noted that Congressional inaction in the area of prisoner litigation suggests "that Congress does not want a damages remedy." *Ziglar,* 137 S. Ct. at 1865.  Furthermore, "the judicial restraint exercised in cases implicating the administration of prisons" is another factor weighing against extension of the *Bivens* remedy.

The Court concludes that Simpson's allegations in Claims 4 and 5 expand the *Bivens* remedy to a new context and that special factors counsel against such expansion.  Consequently, the Court will grant Defendants' motion to dismiss Claims 4 and 5.  Leave to amend these claims will be denied as any amendment would clearly be futile under the circumstances presented.  *See Grayson v. Mayview State  Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002).

C.      *Motion to Dismiss – RFRA Claim*

In any religious rights case, one of the basic questions is whether some government action has "substantially burdened" a person's religious exercise.[11]  For purposes of the Motion to Dismiss, Simpson must simply offer some evidence of a substantial burden.  Simpson is an adherent to Orthodox Therian Shamanism, in which he "worships the Wolf," P's Memo at 3 (ECF No. 19-1), and is "obligated" to "stop immoral activities or conditions" and 'to otherwise seek justice at all costs."  P's Resp. at 33 (ECF No. 54).  Simpson contends that FCI Loretto has a "culture" which endorses the "discrimination and targeting of minority religious beliefs," that "Defendants have engaged in a repeated pattern of harassment and targeting him and frequently

---

[11]      The RFRA provides that the "Government shall not substantially burden a person's exercise of religion", unless the government determines that "the application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling state interest."  42 U.S.C.A. § 2000bb–1(a)(b).

reference Plaintiff's religion when doing so" and "[b]ecause of this, by harassing Plaintiff, Defendants substantially burdened Plaintiff's religious beliefs by exerting pressure on Plaintiff to cease his outward display of his religion."   P's Memo at 19 (ECF No. 19-1). As Defendants correctly note, the allegations in the Amended Complaint provide no details or context about who, or how, or when the actions of any individual defendant placed a substantial burden on Simpson's ability to practice his religion.

Defendants move to dismiss the RFRA claims based on Simpson's failure to allege how any of the individual defendants were personally involved in burdening his religious exercise.  In the opposition brief,  Simpson again generally references "Loretto FCI staff," "Defendants," and "BOP"  and states that "Loretto FCI staff and Defendants would normally either respond [to his grievances] with mean spirited, disrespectful and inappropriate comments about his tail or about Wolves in general, or they would get extremely angry and try to intimate and threaten him."  P's Resp. at 33 (ECF No. 54).  Simpson does, however, identify three (3) defendants, Davenport, Mack, and Dipko, and sets forth specific allegations as to each of these individuals.  *See* P's Resp. at ¶¶ 60, 62, and  footnote 1 on pg. 37 of ECF No. 54.

These additional allegations will be accepted by the Court as supplements to the Amended Complaint.  As such, Simpson's RFRA claims will be allowed to proceed at this early stage of the proceeding, but only against Defendants Davenport, Mack, and Dipko.  The Court finds that the allegations of the Amended Complaint, as supplemented, while sparce, are enough to survive a motion to dismiss with regard to the allegations against defendants Davenport, Mack, and Dipko. The remaining Defendants will be dismissed from the RFRA claims for their lack of personal involvement. Leave to amend these claims will be denied as Simpson supplemented his claims in

response to the motion to dismiss.  *See Grayson v. Mayview State  Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.    Conclusion

For these reasons, Defendants' motion to dismiss or in the alternative motion for summary judgment will be denied in part and granted in part as follows:

1.    The Motion for Summary Judgment will be denied as the PLRA exhaustion requirements do not apply to the Amended Complaint;

2.    The Motion to Dismiss based on sovereign immunity grounds will be denied as moot;

3.    The Motion to Dismiss Claims 4 and 5 of the Amended Complaint will be granted as these claims present new *Bivens* contexts and special factors counsel against such expansion; and

4.    The Motion to Dismiss all RFRA claims will be denied as to Defendants Davenport, Mack, and Dipko and granted as to all other defendants based on their lack of personal involvement.

An appropriate Order follows.


Dated:  November17, 2021                         s/Cynthia Reed Eddy
                                                 Cynthia Reed Eddy
                                                 Chief United States Magistrate Judge


cc:    Jesse Russell Simpson
       (via ECF electronic notification)

       Kezia Taylor
       U.S. Attorney's Office
       (via ECF electronic notification)