IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN

| | |
|---|---|
| JESSE RUSSELL SIMPSON, | ) |
|                               Plaintiff, | )   Civil Action No. 3: 20-cv-0024 |
| v. | )   Chief United States Magistrate Judge |
| JOHN KENNETH DAVENPORT, et al., | )   Cynthia Reed Eddy |
|                               Defendants. | ) |

**MEMORANDUM OPINION[1]**

Presently pending is Defendants' Motion For Judgment on the Pleadings, with brief in support. (ECF Nos. 88 and 89). For the reasons that follow, the motion will be granted and judgment will be entered in favor of Defendants on Plaintiff's *Bivens* claims as a matter of law.

**I.    Procedural and Factual Background**

At the time Simpson filed his original complaint, he was a convicted federal prisoner

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), Plaintiff and the named and served Defendants have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. (ECF Nos. 22 and 49). While named and unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under that statute, *see Burton v. Shamp*, 25 F.4th 198 (3d Cir. 2022) (citing with approval *Williams v. King*, 875 F.3d 500 (9th Cir. 2017) and *Coleman v. Labor and Industry Review Comm'n*, 860 F.3d 461 (7th Cir. 2017)), this Court is unaware of any decision holding that consent is necessary from defendants who are both unserved and unidentified, such as the "All Other Mail Room Staff Members" in this case. Courts disregard such defendants in other contexts, including contexts affecting jurisdiction. See, e.g., 28 U.S.C. § 1441(b)(1) (providing that for removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8 & 9*, 172 F.R.D. 411, 414–15 (D. Haw. 1996) (reaching the same conclusion for diversity jurisdiction over cases first filed in federal court). The Court therefore concludes that consent of the unserved and unidentified defendants in this case, specifically "All Other Mail Room Staff Members," is not necessary to proceed under § 636(c).

1

incarcerated at FCI Loretto. Simpson completed his federal supervision on March 26, 2011. (BOP Inmate Locator, https://www.bop.gov/inmateloc). On July 29, 2021, Simpson filed an Amended Complaint as a matter of right (ECF No. 19), which remains his operative amended pleading. Simpson brings this action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq*.

The Amended Complaint is not a model of clarity. While it is separated into numbered paragraphs, there is no section entitled "Claims for Relief" or "Causes of Action." Rather, Section V, entitled "Statement of Claim," is comprised of nineteen numbered paragraphs (1 – 19, inclusive) each describing a set of facts purporting to support Simpson's claims that Defendants violated his constitutional rights. Simpson concludes each paragraph by blanketly asserting that Defendants "violated Plaintiff's freedom of religion, freedom of speech, freedom from unreasonable searches and seizures, freedom of equal protection under the laws, and freedom from cruel and unusual punishment and the RFRA for substantially burdening his religious beliefs."

On March 16, 2021, Defendants filed a motion to dismiss or in the alternative motion for summary judgment. (ECF No. 47). On November 17, 2021, the Court entered an order granting in part and denying part the motion. Specifically the Court denied the motion for summary judgment finding that the PLRA exhaustion requirements did not apply to the Amended Complaint; the motion to dismiss was granted on Claims 4 and 5 of the Amended Complaint for failure to state a claim as those claims presented new *Bivens* contexts and special factors counselled against such expansion;[2] and the motion to dismiss on Plaintiff's RFRA claims was denied as to

---

[2] The motion to dismiss only addressed on the merits Claims 4 and 5 of the Amended Complaint. As to the remaining *Bivens* claims, Defendants argued that summary judgment should be granted based on failure to exhaust, an argument the Court found to be without merit.

Defendants Davenport, Mack, and Dipko, but granted as to all other defendants based on their lack of personal involvement. (ECF Nos. 59 and 60).

Defendants now have filed the instant motion for judgment on the pleading arguing that they are entitled to judgment on Simpson's remaining seventeen *Bivens* claims because he failed to state a claim for relief. (ECF Nos. 88 and 89). Simpson filed a response in opposition. (ECF No. 96). The motion is ripe for disposition.

## II.   Standard of Review

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[3] "A motion for judgment on the pleadings will be granted, pursuant to Fed. R. Civ. P. 12(c), if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 53 F.3d 255, 262 (3d Cir. 2008). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citing *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)). The only notable difference is that a court, for a motion on the pleadings, may review not only the complaint but also the answer and written instruments attached to the pleadings. *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591-92 (M.D. Pa. 2010). Despite this difference, courts in this circuit have consistently stated that the distinction between the two standards is "merely

---

[3]   The pleadings in this matter have closed. Defendants filed an Answer on February 28, 2022 at ECF No. 73; a Case Management Order was entered on March 8, 2022 at ECF No. 74; and an Order staying discovery pending a ruling on the instant motion was entered on June 9, 2022 at ECF No. 95.

semantic." *Christy v. We The People Forms & Serv. Ctrs.*, 213 F.R.D. 235, 238 (D.N.J. 2003); *see Smith v. City of Phila.*, 345 F. Supp. 2d 482, 485 (E.D. Pa. 2004).

### III. Discussion

Defendants assert that Simpson's seventeen remaining *Bivens* claims are insufficient to state a claim for relief and, in any event, all of these claims would extend *Bivens* to new contexts, which is not permissible in these circumstances. Without directly addressing Defendants' argument, Simpson responds that his *Bivens* claims are for constitutional violations of restricting his access to the courts and retaliating against him on the basis of his First Amendment protected activities and his protected class by:

> (1) improperly screening his incoming mail; (2) improperly withholding his family photographs; (3) rejecting mail that contained his medical records; (4) a medical staff member warning him to be careful because his boss (Defendant Weidlich) was targeting him and that Plaintiff would be given incident reports more easily than other inmates; (5) threatening to withhold Plaintiff's halfway house placement and come after him for the rest of Plaintiff's life; (6) opening, reading and/or copying his legal or special mail; (7) rejecting court documents his relative mailed to him; (8) being denied a second storage bin; (9) being told to submit his grievances to his designated counselor while other inmates were allowed to submit them to any counselor; (10) being transferred to an unfavorable job assignment that heavily restricted his access to the law library; (11) having his inmate cell, locker, and storage bin searched, and legal documents confiscated; (12) being given special instructions unique to Plaintiff that he may only obtain grievance forms during one hour of the day on only four days a week; (13) being required to remain in the unit after his job was completed while allowing other inmates to leave; (14) searching his inmate cell and confiscating his property; (15) giving Plaintiff a retaliatory incident report and then giving him phone sanctions that adversely affected him on the basis of his disability; (16) refusing to make his photocopies for his court submission while freely making photocopies for other inmates; and (17) intimidating him and questioning him about the grievances he assisted his cellmate in filing.

Pl's Resp. at pp. 1-2 (ECF No. 96).

In *Bivens,* the Supreme Court of the United States recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not

encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. Since *Bivens* was decided, the Supreme Court has recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 229 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, -- U.S. --, 137 S. Ct. 1843, 1855 (2017). Over the course of nearly five decades since *Bivens* was decided, the Supreme Court "consistently has refused to expand *Bivens* actions beyond these three specific contexts." *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020). As such, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity," *Abbasi,* 137 S. Ct. at 1857, and that the purpose in taking this cautious approach is to avoid intruding on the role of Congress to enact statutes for claims outside the current *Bivens* context.

In *Abbasi,* the Supreme Court provided a two-step analysis to determine whether to imply a *Bivens* cause of action in a new context. First, the Supreme Court instructed that, "if the case is different in a meaningful way to previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Id*. at 1859. And the meaning of "new context" is "broad." *Hernandez v. Mesa*, 589 U.S. --, 140 S. Ct. 735, 743 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *Id.* This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context or to a new class of

defendants," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *Id*. (quoting *Hernandez*, 140 S. Ct. at 743) (internal question marks omitted).

The Supreme Court's recent decision in *Egbert,* reemphasizes that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional – recognizing a new *Bivens* cause of action continues to be "a disfavored judicial activity." *Egbert v. Boule*, 596 U.S. --, 142 S. Ct. 1793, 1803 (2022) (quoting *Abbasi*, 137 S. Ct. at 1857; *Hernandez*, 140 S. Ct. at 742-43). *Egbert* clarified that the two-step process set forth in *Abbasi* "often resolve[s] to a single question: whether there is any reason to think Congress might be better equipped to create a damages remedy. *Id*. at 1805. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'" and if the answer is "yes," or even potentially yes, the plaintiff cannot recover under *Bivens*. *Id*. (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)). Mindful of *Egbert's* recent clarification and emphasis on the presence of special factors, the Court proceeds with *Abbasi*'s two-step analysis.

1. <u>New Context</u>

After careful consideration of the parties' positions and after conducting its own research, the Court finds that Simpson's remaining *Bivens* claims are notably different from the claims raised in *Bivens, Davis,* or *Carlson.* As noted above, in his Amended Complaint, Simpson makes references to violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments and generically states after each claim that "[t]his claim violated Plaintiff's freedom of religion, freedom of speech, freedom of equal protection under the laws, freedom of due process, freedom from cruel and unusual punishment, . . . ." *See* Amended Complaint, at pp. 3 – 17 (ECF No. 19). It is clear from the allegations of the Amended Complaint that Simpson's claims present a new

context for *Bivens* that is meaningfully different from the claims recognized in *Bivens, Davis*, or *Carlson.*

### 2. Special Factors

Having concluded that Simpson's claims present a new context, the Court must determine whether "there are any special factors that counsel hesitation" in extending *Bivens*. *Hernandez*, 140 S. Ct. at 743 (internal quotation marks and alternations omitted) (quoting *Abbasi*, 137 S. Ct. at 1857). "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." *Id.* at 1857-58. As to the first, because Simpson is no longer incarcerated, his claim "is 'difficult to address except by way of damages actions after the fact,' which cannot be accomplished through the administrative grievance process or a habeas petition." *Mammana v. Barben*, No. 4:17-cv-00645, 2020 WL 3469074, at *3 (M.D. Pa. 2020), *aff'd*, 856 F. App'x 411 (3d Cir. 2021) (quoting *Bistrian v. Levi,* 912 F.3d 79, 92 (3d Cir. 2018) (quoting *Abbasi,* 137 S. Ct. at 1862)). The absence of an alternative remedy, however, is not dispositive. The Court must still consider whether other factors – in particular, separation-of-powers concerns – weigh against creating a *Bivens* remedy to fill the void. *See id*. (citing *Wilkie v. Robbins,* 551 U.S. 537, 550 (2007)). The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Abbasi,* 137 S. Ct. at 1857. In *Abbasi*, the Supreme Court said "[t]he answer will most often be Congress." *Id.* Thus, any special-factors assessment must seek to discern whether Congress would want the federal judiciary to impose "a new substantive legal liability" in a given case. *See id.* at 1857-58. The Supreme Court has noted that Congressional inaction in the area of prisoner litigation suggests "that Congress does not want a damages remedy." *Abbasi,* 137 S. Ct. at 1865. Furthermore, "the

7

judicial restraint exercised in cases implicating the administration of prisons" is another factor weighing against extension of the *Bivens* remedy.

The Court concludes that Simpson's remaining *Bivens* claim expand the *Bivens* remedy to a new context and that special factors counsel against such expansion.

### III. Conclusion

For these reasons, Defendants' motion for judgment on the pleadings will be granted and all remaining *Bivens* claims will be dismissed with prejudice. This case will proceed on Simpson's RFRA claims against Defendants Davenport, Mack, and Dipko.

An appropriate Order follows.


Dated:  September 22, 2022                s/Cynthia Reed Eddy
                                          Cynthia Reed Eddy
                                          Chief United States Magistrate Judge



cc:    Jesse Russell Simpson
       (via ECF electronic notification)

       Kezia Taylor
       U.S. Attorney's Office
       (via ECF electronic notification)