IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN

JESSE RUSSELL SIMPSON,          )
                                )
              Plaintiff,        )   Civil Action No.: 3: 20-cv-0024
                                )
                                )   United States Magistrate Judge
        vs.                     )   Cynthia Reed Eddy
                                )
                                )
JOHN KENNETH DAVENPORT,         )
Correctional Systems Supervisor; T. MACK, )
Correctional Counselor; and JACQULYN )
ELAINE DIPKO, Correctional Officer, )
                                )
              Defendants.       )

MEMORANDUM OPINION[1]

**CYNTHIA REED EDDY, United States Magistrate Judge**

Pending before the Court is the Motion for Summary Judgment filed by Defendants John Kenneth Davenport, T. Mack, and Jacqulyn Elaine Dipko. (ECF No. 106). Plaintiff, Jesse Russell Simson, has opposed the motion. (ECF No. 109). The issues are fully briefed and the factual record developed. (ECF Nos. 107 and 108). After carefully considering the motion, the material in support and opposition to the motion, the memoranda of the parties, the relevant case law, and the record as a whole, the motion will be granted.

**I.    Procedural History**

Plaintiff, Jesse Russell Simpson ("Simpson"), initiated this case on February 12, 2020. (ECF No. 1). At the time of the events giving rise to this lawsuit, Simpson was a convicted federal prisoner incarcerated at FCI Loretto. Simpson was designated to FCI Loretto on April 12, 2019,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of judgment. (ECF Nos. 22 and 49). The Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331.

1

and remained in custody there until April 23, 2020, when he was transferred to home confinement pursuant to 18 U.S.C. § 3621(b) to serve the remainder of his sentence.  After receiving all good conduct time available to him pursuant to 18 U.S.C. § 3624, Simpson was released from BOP custody on March 26, 2021.

On July 29, 2020, Simpson filed a verified Amended Complaint, which remains his operative pleading. (ECF No. 19). In the Amended Complaint, Simpson alleges that he is an adherent to Orthodox Therian Shamanism – in which he "worships the Wolf" (ECF No. 19-1, at p. 3), is "obligated" to "stop immoral activities or conditions," and "to otherwise seek justice at all costs."  ECF No. 54, p. 33, at ¶ 3.

Following the Court's rulings on Defendants' motion to dismiss and motion for judgment on the pleadings, one claim remains in this case:  a claim brought under the Religious Freedom Restoration Act ("RFRA") against three defendants - Defendants Davenport, Mack, and Dipko. Simpson challenges Defendants' individual actions, rather than challenging a law, or policy, or conduct pursuant to a law or an official BOP policy.

Defendants argue they are entitled to summary judgment because (1) Simpson's allegations cannot establish that Defendants substantially burdened his exercise of religion; (2) that Defendants were unaware of Simpson's religion and/or had no role or authority to permit or deny Simpson's exercise of religion; and (3) alternatively, even if this Court were to find that Defendants substantially burdened Simpson's exercise of religion, they are entitled to qualified immunity. Plaintiff responds that genuine disputes of material fact exist which preclude the entry of summary judgment.

## II.     Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250. A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248. An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

With this standard in mind, the Court now turns to the motion for summary judgment.

## III. Evidence Considered on Summary Judgment

In support of their motion, Defendants submitted a Declaration from each of the Defendants; a Declaration from Eva Baker-Dykstra, a Paralegal Specialist employed by the BOP; the Declaration of Plaintiff Concerning His Religious Beliefs,[2] which was attached to the Amended Complaint; and excerpts from Defendants' responses to Simpson's interrogatories. (ECF No. 108). Additionally, in compliance with Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56(B)(1), Defendants filed a Concise Statement of Undisputed Material Facts. (ECF No. 107).

Simpson did not file his own exhibits in opposition to the summary judgment motion. Moreover, contrary to Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56(C)(1), and this Court's Order of 1/23/2023 (ECF No. 104), Simpson did not file a Responsive Concise Statement. Local Rule 56(E) imposes an affirmative duty on a litigant to respond to the moving party's Concise Statement of Undisputed Material Facts and provides that "[a]lleged material facts set forth in the moving party's Concise Statement of Material Facts . . . will be admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."

But both Simpson's Amended Complaint and the Declaration attached to the Amended Complaint are verified, so the factual allegations in these documents, to the extent they are based on personal knowledge, will be considered as evidence in opposition to the summary judgment motion. *Jackson v. Armel*, 2020 WL 2104748, at *5 (W.D.Pa. May 1, 2020) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary

---

[2] Defendants note the Declaration was filed without any supporting documentation establishing the existence of Orthodox Therian Shamanism and its tenets. CSMF, ¶ 13.

4

judgment motion). *See also Brooks v. Kyler*, 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from a [pro se prisoner] at the summary judgment phase of the proceedings"); *Boomer v. Lewis*, 2009 WL 2900778, at *2 n.4 (M.D.Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").

IV.   Analysis

    a.   *Religious Freedom Restoration Act*

The Religious Freedom Restoration Act ("RFRA") prohibits the federal "Government" from "substantially burden[ing] a person's exercise of religion" unless "application of the burden . . . is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that . . . interest." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 301 (3d Cir. 2016) ("*Mack II*"); 42 U.S.C. § 2000bb-1(b)(1–2). "Exercise of religion" is defined in RFRA as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb–2(4) (incorporating RLUIPA's definition for "religious exercise," 42 U.S.C. § 2000cc-5(7), as the definition of "exercise of religion" for RFRA). Plaintiff bears the burden of pleading the elements of a prima facie case RFRA: "that the government (1) substantially burdened (2) a sincere (3) religious exercise." *Mack II,* 839 F.3d at 304. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006). Once plaintiff has established a prima facie case, the burden shifts to the defendant to demonstrate that its actions were the least restrictive means of furthering a compelling government interest. *Mack v. Yost*, 63 F.4th 211, 228 (3d Cir. 2023) ("*Mack III*").

"Although RFRA does not explicitly define the term 'substantial burden,' [the Court of Appeals for the Third Circuit] ha[s] explained that a substantial burden exists where:

5

> (1) 'a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit;' or
>
> (2) 'the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.'"

*Mack II*, 839 F.3d at 304 (quoting *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007)). "A burden can be 'substantial,' triggering heightened scrutiny under RFRA, 'even if it involves indirect coercion to betray one's religious beliefs." *Mack II*, 839 F.3d at 291. The question of whether a burden is "substantial' is a question of law, not a question of fact. *Real Alternatives, Inc. v. Sec'y of HHS*, 867 F.3d 338, 356 (3d Cir. 2017). RFRA provides relief only if the burden on religious exercise is indeed substantial; it does not provide relief "from all government burdens." *Id*. at 357. "There is no substantial burden if the governmental action does not coerce the individuals to violate their religious beliefs or deny them the 'rights, benefits, and privileges enjoyed by other citizens – even if 'the challenged Government action would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs." *Id*. (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988)).

    b.    *Discussion*

It is Simpson's burden to show three elements to establish a prima facie RFRA claim: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion. Defendants do not challenge that Simpson's beliefs are sincere and of a religious nature; they only challenge the first element: that Simpson's exercise of religion was substantially burdened by their actions.

> Simpson argues that,
>
> the practice of Orthodox Therian Shamanism explicitly requires Plaintiff to perform the religious duty of reporting abuse, such as the mistreatment of humans or animals and other morally or ethically objectional actions, policies, or procedures.

> According to case law surrounding the PLRA and Congress's intent, <u>the prison grievance system is the best suited and most expedient tool available to remediate corruption and immoral behavior.</u>

Pl's Br. at ¶ 16 (emphasis added). And that Defendants' actions were,

> substantially burdening to Plaintiff's religious beliefs as it pressured Plaintiff to stop trying to correct the immoral behavior even though he was religiously obligated to do so. In fact, Defendants' retaliation pressured him so much to violate his religious beliefs that he <u>did</u> eventually stop filing complaints at Loretto FCI, in violation of his religious obligations, when Defendants made it clear through their retaliation that they would postpone his release date as Davenport, various unit officers, and inmate orderlies (at the direction of Defendant Mack) threatened would happen if he didn't stop complaining.

*Id*. at ¶ 17 (emphasis in original; footnote omitted). According to Simpson, Defendants "frequently referenced Plaintiff's religion and his religious practices (such as reporting illegal and immoral behavior via the inmate grievances system) when doing so," Pl's Br. at ¶ 15, and interfered with Simpson's ability to file grievances, which substantially burdened Simpson's exercise of religion.

Defendants put forth three arguments in support of their motion for summary judgment: (1) Simpson has produced no evidence to establish that Defendants substantially burdened his exercise of religion; (2) Defendants were unaware of Simpson's religion and/or had no role or authority to permit or deny Simpson's exercise of religion; and (3) in the alternative, if the Court finds that Defendants substantially burdened Simpson's exercise of religion, Defendants are entitled to qualified immunity. Ds' Br. at p. 2 (ECF No. 106). The Court will first address whether Defendants' actions placed a substantial burden on Simpson's exercise of religion.

### 1. *Defendant John Kenneth Davenport*

Defendant John Kenneth Davenport has been employed by the United States Department of Justice, Federal Bureau of Prisons, since May 3, 1993. During the relevant time, he served as the Mailroom, Receiving and Discharge and Records Supervisor at FCI Loretto. Since September

7

2021, he has held the position of Employee Development Manager. Declaration, ¶ 1 (ECF No. 108-1).

Simpson alleges that Defendant Davenport during one conversation made demeaning comments about Simpson's religion and made "outright threats" that struck Simpson with "intense fear that stayed with him for the entire rest of the time that Plaintiff was at the facility . . ." Pl's Br. at ¶ 3.

The undisputed summary judgment evidence of record reflects that on November 27, 2019, Defendant Davenport called Simpson into the mail room to discuss an administrative complaint Simpson had submitted complaining that his privileged mail had been illegally searched. According to Simpson, Davenport became angry when he realized that Simpson was seeking monetary damages from him. Davenport then began a barrage of "religious-based insults and threats." *Id*. at ¶ 4. Simpson contends that Davenport's anger and threats "was not just offensive, it was chilling to Plaintiff's religious beliefs." Simpson began to "pose questions and experience thoughts contrary to his deeply held religious beliefs . . . ." *Id*. at ¶ 5.

The Court finds that while this conversation with Defendant Davenport may have been uncomfortable and while Davenport's comments may have been offensive, Simpson has produced no evidence to demonstrate this one, incidental conversation with Defendant Davenport resulted in a "substantial burden" to Simpson's exercise of religion.

### 2. *Defendant Thomas Mack*

Defendant Thomas Mack has been employed by the United States Department of Justice, Federal Bureau of Prisons, since February 13, 2000. Since June 19, 2011, he has held the position of Correctional Counselor at FCI Loretto. Declaration, ¶ 1 (ECF No. 108-2).

Simpson alleges that Defendant Mack, who was Simpson's work assignment supervisor, "weaponized the inmate job assignment system against Plaintiff on the basis of Plaintiff's religion and his religiously motivated grievances." Pl's Br. at ¶ 8. Specifically, Simpson contends that Defendant Mack:

> (i) refused to accept Simpson's "religiously motivated Administrative remedy submissions";
>
> (ii) switched Simpson's job assignment from an evening shift position to a dayshift position, which prevented Simpson from using the Law Library, which he needed access to in order to "conduct legal research and type Court documents and grievances, all of which he was religiously obligated to do in the pursuit of bettering the world and reducing corruption and immoral activity;" and
>
> (iii) on two separate occasions, "sent his orderlies to Plaintiff to confront him about his religiously motivated grievances and to convey Defendant Mack's threats about extending Plaintiff's release date."

*Id.* To the extent that Simpson alleges that Defendant Mack's actions either interfered with Simpson's ability to file grievances or pressured Simpson to stop complaining, the undisputed summary judgment evidence of record belies this argument. Simpson does not dispute that he filed 314 requests for administrative remedy during his 376 days at FCI Loretto. Administrative Remedy Generalized Retrieval, Exh. D (ECF No. 108-8). Simpson has provided no evidence to support his claims that Defendant Mack's actions substantially burdened his exercise of religion. Bare assertions, conclusory allegations, or suspicions are not enough to defeat summary judgment. The Court finds that none of Defendant Mack's actions placed a substantial burden on Simpson's exercise of religion.

3.  *Defendant Jacqulyn Elaine Dipko*

Defendant Jacqulyn Elaine Dipko has been employed by the United States Department of Justice, Federal Bureau of Prisons, since September 2019. From September 2019 to September 2021, during the relevant time, she was a Corrections Officer at FCI Loretto. From September

2021 to September 2022, she was a Senior Officer at FCI Loretto. Since September 2022, she has held the position of Senior Officer Specialist at FCI Loretto. Declaration, ¶ 1 (ECF No. 108-3).

Although Simpson alleges that Defendant Dipko was "gunning for" him, Simpson has provided no details or evidentiary support that she interfered with Simpson's exercise of religion. Simpson contends that on March 5, 2020, an inmate orderly told Simpson that Simpson needed to "watch [his] back with [Defendant] Dipko on" because Defendant Dipko had told the orderly "point blank that she's gunning for [Simpson]." Pl's Br. at ¶ 10. Simpson approached Defendant Dipko asking why other inmates were telling Simpson to be careful when she was on duty. According to Simpson, Dipko replied,

> I have nothing against you. This comes from my superiors. They're telling me to make sure I keep an eye on you and keep you in the unit. . . .I'm telling you. It's not about you. I can't go against my higher ups. If they tell me to do something, I have to do it . . . Everyone's watching you.

*Id.* It appears Simpson's claims against Defendant Dipko center around this one conversation and because Dipko did not grant Simpson permission to leave the unit. Yet Simpson has provided no evidence to show how this single conversation or being denied permission to leave the unit substantially burdened his exercise of religion. The Court finds that none of Defendant Dipko's actions placed a substantial burden on Simpson's exercise of religion.

In sum, the Court finds that Simpson has failed to establish a prima facie case under RFRA. The summary judgment record has no evidence demonstrating that any of the Defendants' actions placed a substantial burden on Simpson's exercise of religion. Defendants' motion for summary judgment, therefore, will be granted.[3]

---

[3] Having found that Defendants' actions did not place a substantial burden on Simpson's exercise of religion, the Court need not address Defendants' second argument: that Defendants were unaware of Simpson's religion and/or had no role or authority to permit or deny Simpson's exercise of religion. An argument which Plaintiff disputes.

    **c.**    *Qualified Immunity*

In the alternative, Defendants argue they are entitled to summary judgment because they are protected by qualified immunity. The Court of Appeals for the Third Circuit recently held that a qualified immunity defense is available in a suit brought under RFRA. *Mack III,* 63 F.4th at 222. "'[T]he judicially created doctrine of qualified immunity' shields governmental officials from suit and from liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'." *Id*. at 221 (quoting *Peroza-Benitez v. Smith*, 994 F.3d 157, 164-65 (3d Cir. 2021).

The Court need not address the issue of qualified immunity, as the Court has found that Plaintiff has not met his burden to establish a prima facie case under RFRA.

**V.**    **Conclusion**

After carefully reviewing the undisputed summary judgment record and the parties' arguments, the Court finds that Defendants are entitled to the summary judgment. An appropriate Order follows.

Date:  August 17, 2023        BY THE COURT:

                                    s/Cynthia Reed Eddy
                                    Cynthia Reed Eddy
                                    United States Magistrate Judge

cc:    Jesse Russell Simpson
       (via ECF electronic notification)

       Kezia Taylor
       U.S. Attorney's Office
       (via ECF electronic notification)